THOMAS BAILEY et al., Respondents, v. CHARLES M. PUGH et al., Constituting the Board of County Commissioners of Dunn County, North Dakota, Appellants.

(179 N. W. 705.)

**Counties — mandamus — in proceedings to remove county seat, it is for commissioners, and not court, to pass on petition — mandamus not issued to compel county commissioners to reverse their decision against sufficiency of petition for removal of county seat.**

In proceedings for the removal of a county seat, it is for the county commissioners, and not the court, to pass on the sufficiency of the petition for removal. When the county commissioners decide against the sufficiency of a petition, the court may not, by mandamus or otherwise, compel them to undo or reverse their decision.

Opinion filed November 5, 1920.

Appeal from a judgment of the District Court of Dunn County; Honorable *F. T. Lambke,* Judge.

Reversed.

*Murtha & Starke* and *W. F. Burnett,* for appellants.

The passing upon the sufficiency of the petitions of Dunn Center was a discretionary matter which could not be controlled by mandamus. Sawyer v. Mahew (S. D.) 71 N. W. 141; Oliver v. Wilson, 8 N. D. 590; State ex rel. Wiles v. Albright, 11 N. D. 22, 98 Am. Dec. 375.

The writ of mandamus will not issue where there is a plain, speedy and adequate remedy at law. Taubman v. County Commrs. (S. D.) 84 N. W. 784.

A court or board clothed with judicial functions may be compelled to act, but the court issuing the writ cannot control its decision. Ex parte Morgan, 114 U. S. 174; Ins. Co. v. Adams, 9 Pet. 571.

*Nuchols & Kelsch,* for respondents.

ROBINSON, J. This proceeding relates to the removal of the county seat of Dunn county. It is an appeal from an order of mandamus made by Judge Lembke on the 19th day of June, 1920. As the record shows, in May, 1920, there were filed with the county auditor numerous petitions for the removal of the county seat. On June 8th the county commissioners met in special session to consider the same and after considering for about nine days, on June 18, 1920, the board of county commissioners made and entered an order or resolution denying the petitions and declaring that the same were not signed by qualified electors equal in number to three fifths of all the votes cast in the county at the last preceding general election. That resolution has not been reconsidered or undone. It remains in full force and effect. But on June 19, 1920, at 7:15 P. M. the court issued to the county commissioners a peremptory writ of mandamus commanding them forthwith to convene and before 10 o'clock P. M. of that day to enter and record a proper resolution granting the petitions and directing the county auditor to publish legal notices, to prepare ballots and submit to the voters the question of the removal of the county seat at the primary election on June 30, 1920. And it was further ordered that in case the board of county commissioners refused to comply with the order of the court that C. A. Barton, Joseph Huschka and O. O. Odegard are hereby appointed as special commissioners to act in place of the county commissioners and to carry out all the orders, directions, and commands of the peremptory writ. The writ was served only on

one of the county commissioners and it was in no way possible to serve it on the other two commissioners before 10 p. m. of June 19th. However, Barton and Odegard, the two special commissioners, met at 10 p. m. on June 19th, and at 10:40 p. m. made an order in accord with the writ. Then the question of removal was submitted to the voters at the primary election on June 30th, and a majority of the votes were given in favor of Manning as the county seat. The statutes which relate to the matter are as follows:

Comp. Laws, § 3233: When the inhabitants of any county desire to remove the county seat, they may present a petition to the board of county commissioners of their county praying for such removal and that an election be held to determine whether or not such removal shall be made.

Comp. Laws, § 3234: If the petition is signed by qualified electors of the county, equal in number to at least three fifths of all the votes cast in the county at the last preceding general election, the board must, at the next general election, submit the question of the removal to the electors of the county.

Comp. Laws, § 3239 (Sess. Laws 1917, chap. 102) as amended: In counties where the county seat is not located on a railroad or interstate river, the question of the county seat removal may be voted on at any primary election, and if more than two towns are contending for the location of the county seat at such election, then the two towns receiving the highest vote at such primary election, and these two towns only, shall be placed on the official ballot at the first coming general election, and the town then receiving the highest number of votes cast for the county seat shall be designated as the county seat.

The case does not call for any discussion. The mandamus order shows on its face that it is dictatorial, arbitrary, and void. The court had neither jurisdiction of the subject-matter nor of the county commissioners; nor did the court have any jurisdiction to appoint special county commissioners. This court has justly held that on the sufficiency of a petition for the removal of a county seat the decision of the county commissioners is final. State ex rel. Little v. Langlie, 5 N. D. 594, 601, 32 L.R.A. 723, 67 N. W. 958. As the court there held: When we consider the nature of the question to be passed upon, the peculiar facilities that county commissioners have living in close

contact with the people, for their reaching a correct result, and the enormous expense involving a trial of that question in court, we are impelled to the conclusion that the decision of the board is final.

In this matter it seems the county commissioners took some eight or nine days to consider and decide on the voluminous records and petitions and the sufficiency of the removal petitions, and then, in the most summary manner, the court makes an order directing that on the same day, and before 10 P. M., the board shall reconvene and reverse their decision and enter a decision as dictated by the court. Clearly the order was null and void. It was never served, and of course it was justly disregarded by the county commissioners.

Reversed with costs and case remanded forthwith.

CHRISTIANSON, Ch. J. and BIRDZELL and GRACE, JJ, concur.

BRONSON, J. I concur in the result.